448 A.2d 1049

Max A. HANKIN and Janet Hankin,

v.

Moe Henry HANKIN, Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Benjamin R. Shanken and Pauline Shanken, and Estate of Samuel Hankin and Harriet Hankin and Pan American Associates.

Appeal of Moe Henry HANKIN, Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Benjamin Shanken, and Pauline Shanken.

Superior Court of Pennsylvania.

Argued Sept. 9, 1981.

Filed Dec. 18, 1981.

Petition for Allowance of Appeal Denied May 3, 1982.

Reargument Denied Aug. 17, 1982.

296

Thomas A. Allen, Philadelphia, and Philip D. Weiss, Norristown, for appellants.

Franklin Poul, Philadelphia, for Max Hankin, etc., appellees.

Sheldon Bonovitz, Philadelphia, for Samuel Hankin, appellee.

Theodore R. Mann, Philadelphia, for Harriet Hankin, appellee.

Stephen G. Yusem, Norristown, for Pan American, appellee.

Before POPOVICH, WATKINS and VAN der VOORT, JJ.

PER CURIAM:

This controversy is no stranger to this Court. A full recital of the factual basis of the controversy is set forth in *Hankin v. Hankin*, 279 Pa.Superior Ct. 179, 420 A.2d 1090 (1980) and will not be repeated in this opinion.

The court below originally entered the following Decree Nisi after extensive hearings, findings of fact and conclusions of law:

"AND NOW this 2nd day of April, 1979, in accordance with the above findings of fact and conclusions of law, IT IS HEREBY DECREED that:

1. No receiver shall presently be appointed to dispose of the assets of the 'Hankin Family Partnership'.

2. Management and liquidation of the assets of the 'Hankin Family Partnership' shall continue as heretofore, under supervision of the Court.

3. In accordance with conclusions of law 15 through 18, supra, the Willow Grove Park properties are to be sold to Pan American Associates pursuant to the existing Agreements. Execution of the required documents to effect such conveyances by a majority of the partners shall be valid and sufficient to complete passage of title.

4. The Option Agreement covering the Valley Forge Golf Course property is valid and binding upon the partnership. In the event said option is exercised by Pan American Associates, execution of the required documents to effect a conveyance thereunder by a majority of the partners shall be valid and sufficient to complete passage of title.

5. The Court will review and act upon requests to approve such additional sales of partnership property as shall from time to time be presented for such purpose. If

necessary, hearings will be scheduled to consider the appropriateness of proposed sales.

6. Moe and Perch Hankin shall continue to arrange the payment of federal and state income taxes for the individual partners, as has been the custom of the partnership in the past.

7. The various motions and preliminary objections filed heretofore, being moot by reason of this Adjudication, are so declared and dismissed.

8. The Court will enter such additional orders as are required to effectuate the continuing liquidation of partnership assets, as such are required, from time to time, after due notice to the parties and their respective counsel.

9. An accounting, if required, will abide liquidation of the partnership assets, or further order of the Court.

This Decree shall become final unless exceptions are filed pursuant to Pa.R.C.P. 1518.

BY THE COURT:

/s/ LOUIS D. STEFAN, J."

This Court affirmed this Decree by opinion filed June 6, 1980 and a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied September 25, 1980.

In November, 1980, a petition for distribution in kind was filed by original complainants and other minority partners, which led the court below to enter a second Decree Nisi as follows:

"*DECREE NISI.* AND NOW, this 10th day of July, 1981, in accordance with the foregoing, it is hereby DECREED that:

1. On August 17, 1981, the Court will hold a hearing to determine the fair market value of each of the remaining partnership assets. To the extent that the partners are not then prepared to stipulate to such values, the Court will hear such expert testimony as to parties then offer, and will judicially determine values based on the evidence. Fees of one appraiser selected by the majority Hankins

and one appraiser selected by minority Hankins shall be paid by Hankin Enterprises.

2. Thereafter, the Court will conduct the selection procedure as follows:

(a) The Court will first determine what dollar amount shall be set aside as a reserve to satisfy financial claims including capital account claims among the partners, and to equalize the in kind distribution upon its conclusion.

(b) The five respective partnership interests will then draw numbers from one through five to determine the order of selection.

(c) The order of selection of properties will be: one, two, three, four, five; five, four, three, two, one; and, subject to paragraph (d) below, will then be repeated until all properties except properties totaling in value an amount equal to the reserve, as previously determined by the Court, have been selected.

(d) Each partnership interest shall continue to select properties until that partnership interest has selected properties totaling in value one-fifth of the total valuation minus the reserve.

3. Between now and the completion of the selection process, the operation of the operating properties shall continue as heretofore; provided, however, that no property shall be sold except by mutual consent of all the parties.

This Decree shall become final unless exceptions are filed pursuant to Pa.R.C.P. 1518.

> BY THE COURT:
> /s/ LOUIS D. STEFAN, J."

Exceptions of appellants were dismissed by Order dated August 12, 1981. This appeal followed.

As the Chancellor originally found and this Court affirmed, it is to the advantage of all interested parties to have this partnership liquidated in an orderly manner under the direction and control of the court below, within a reasonable time.

■ The partnership was dissolved in 1977 and at the time was possessed of diverse holdings of a value of 77 million dollars, the nature of which does not lend itself to immediate liquidation. During the intervening time the majority partners, who are charged with the liquidation, have been hindered by the minority partners, either some or all, by litigation at every step of the way. Under all the circumstances it does not appear that the liquidating partners have had a reasonable, unhindered time in which to accomplish an orderly liquidation of such vast holdings and they should be granted another year to accomplish same. The lower court abused its discretion in setting aside its original order at this time. In the meanwhile liquidation shall continue as heretofore under the supervision of the court below.

After a careful study of the long record of this sometimes bitter controversy, it is the opinion of this Court that the liquidation must be accomplished in a careful and orderly fashion. We do not believe that the selection of properties as contained in the opinion of the court below accomplishes this purpose at this time.

However, at the end of that time, should the liquidation not be complete, the lower court shall then make whatever order is appropriate at the time which best serves the interests of all parties concerned.

■ The language of the *Uniform Partnership Act*, 59 Pa.C.S.A. Sec. 360(a) and the general rule favors a liquidation and cash distribution in the absence of an agreement to do otherwise. However, under special circumstances, where the best interests of all concerned will be served by some alternate method we should approve same. Equity in Pennsylvania must never leave a litigant without a remedy which protects a minority interest.

The usual method of a public sale of the assets would be to the disadvantage of the minority parties, the appellees, because of financial considerations; and the drawing as provided in the order of the court below would be clearly to the disadvantage of the majority partners, the appellants,

who over the course of the years created the assets being liquidated.

The order of the court below is reversed as to the selection process provided therein and the management and liquidation of the assets of the "Hankin Family Partnership" shall continue as provided in the Decree dated April 2, 1979 under the supervision of the court below for a period of one (1) year from the date of this opinion.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

The ruling of the Majority, being based on conclusionary statements unsubstantiated by the record, unduly and unnecessarily protracts an already overdue disposition of the Hankin Family Partnership assets. Thus, I vigorously dissent to the reversal of the lower court's Order directing that there be a distribution in kind of the partnership property.

The standard to be adhered to in reversing the findings of fact of a Chancellor who hears testimony in a non-jury trial has been oft-stated: " 'In the absence of a clear abuse of discretion, matters purely within the discretion of a trial court are not reversible on appeal . . . [and] [t]o justify a reversal, the abuse of discretion must be clearly shown.' *C. E. Williams Co. v. H. B. Pancoast Co.*, 412 Pa. 166, 170, 194 A.2d 189, 191 (1963) (citations omitted)." *Hankin v. Hankin*, 279 Pa.Super. 179, 204, 420 A.2d 1090, 1103 (1980); see also *Zvonik v. Zvonik*, 291 Pa.Super. 309, 435 A.2d 1236 (1981).

The Majority states that where, as here, "it does not appear that the liquidating partners [appellants] have had a reasonable, unhindered time in which to accomplish an orderly liquidation of such vast holdings[,] . . . they should be granted another year to accomplish same." (Slip Opinion at 5) I do not agree.

As a reading of the record unerroringly reveals, the liquidating efforts of the appellants, over a period of some two (2) years, have resulted in less than ¼ of the properties held by the partnership being sold. (RR 215a–229a) Such fig-

ure, based on this writer's perusal of the evidence, is not linked to appellees' efforts to protect their share in the partnership assets. Rather, the evidence more logically points to appellants' insistence on selling the holdings of the partnership as a package to prospective buyers, instead of attempting to sell them in parcels, as a contributing factor to the paucity of sales. More particularly, given the depressed realty market and the sky-rocketing interest rates on loans, appellants' approach to liquidating the assets was ill-advised. On this point, the lower court aptly stated:

"It was particularly by reason of the unique nature of a number of the[ ] [partnership's] properties, and the assertions by [appellants] that it was essential to preserve their status as a chain of properties, on the basis of the whole being more valuable than the aggregate of the parts, that the Court earlier refused [appellees'] request for appointment of a receiver. [Appellants] were adamant in asserting that the motel properties could be sold within a reasonable time; that it would be detrimental financially to break the set, and dispose of the motels on an individual basis; and that these assets were producing substantial income for the benefit of the partnership, rather than wasting or facing injury or diminution in value. Although the Court accepts the documented assertions of [appellants] that they have, indeed, vigorously engaged in selling efforts, pursuant to their representations, the fact is that the motels remain unsold. [Appellants] now ask for additional time, based upon their continuing assertions of confidence, in which to attempt to effectuate a sale; to which the [appellees] rightfully reply that the [appellants] have had their opportunity, and that the time has come to change.

\* \* \* \* \* \*

Much has happened in the intervening two years since the date of the original Adjudication. Interest rates have risen drastically; financing real estate sales has become

increasingly difficult by reason of the volatility of interest rates; ...." (Lower Court Opinion at 2 & 3)

The lower court went on to opine:

"By reason of the various changes in circumstances which have ensued since the date of the original Adjudication by this Court; and, considering that, in fact, [appellants] have controlled the show since that date, with results that can be described only as disappointing; and, because a continuing delay in allowing [appellees] finally to enjoy possession of their interests in the Hankin [Family Partnership] property would manifestly be unjust; the Chancellor has concluded that the within case represents such special situation as would justify a decree directing distribution in kind of the remaining partnership assets. The debts of the partnership are insignificant as a result of the proceeds of those sales which have been accomplished being applied toward their retirement. The failure of the [appellants] to dispose of the seven motels after all this time indicates that, for whatever reason, there is no strong market for acquisition of the entire chain. To allow the long delay which resulted from the well-intentioned assurances of the [appellants], that they would liquidate the real estate, to work against [appellees] over whose protests the [appellants] were given their day, would be unjust." *Id.* at 5–6.

I agree with the sentiments espoused by the Chancellor, set forth supra.

The instant litigation has had an extended run in the courts, i.e., since August of 1977. During this entire period, Judge Stefan, as noted by this Court in *Hankin v. Hankin*, supra, has done "an admirable job in handling the very large record in this case." He has presided over numerous hearings, in which each side has presented a voluminous amount of evidence. For example, records were submitted and testimony was elicited as to the energy expended by all interested parties as to the expeditious liquidation of the

partnership holdings. Based on such evidence, the Chancellor made detailed findings of fact[1] and conclusions of law[2]

1. Such findings consisted of the following:

"FINDINGS OF FACT

1. At the time of this Court's Adjudication on April 2, 1979, when this Court evaluated all of the partnership properties at more than $72,000,000., the following properties had been sold and closed or were under agreements of sale which subsequently closed:

| | |
|---|---|
| 1/6th interest in lot . . . . . . $110,000 (Property #42) | |
| Baker's Country Club . . . . . . $175,000 (Property #46) | |
| Pancake House . . . . . $250,000 (Property #22) | |
| Willow Grove Park . . . . $7,717,430 (Property #17, 18) | |
| TOTAL | $8,252,430 |

2. The following properties have been sold and closed since this Court's Adjudication:

| | |
|---|---|
| Tarrytown . . . . . . $375,000 (Property #37) | |
| Cranberry Township . . . . . $2,251,000 (Property #35) | |
| Davisville Road . . . . . . $400,000 (Property #14) | |
| Knock-on-Wood . . . . . . $460,000 (Property #32) | |
| 4.74 Acres, Upper Moreland . . . $237,000 (Unidentified by property number) | |
| Davisville Road lot . . . . . $ 10,000 | |
| TOTAL | $3,733,000 |

3. The following properties are now under agreements of sale which have not yet closed:

| | |
|---|---|
| Evans Products . . . . . . $200,000 | |
| 6.4 Acres, Warner & . . . . . $1,100,000 * Gulf Roads | |
| Valley Forge Golf Course . . $13,700,000 * | |
| Beotoll . . . . . . $ 80,000 | |
| TOTAL | $15,080,000 |

* Settlement on these properties is conditioned upon zoning approvals from Upper Merion Township. As of this date, such approvals have not been obtained."
(Lower Court Opinion at 6–7)

4. The balance of partnership properties remain unsold.

\* \* \* \* \* \*

2. Such conclusions consisted of the following:

in deciding that the most equitable method by which the partnership property could be disposed of, without impairing the interests of the respective parties, would be by ordering a distribution in kind.

I find, from my reading of the record, that because there is no evidence that the lower court " ' "abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence[,]" ' " *Zvonik v. Zvonik,* supra, 291 Pa.Super. at 309, 435 A.2d at 1238, the Order below should be affirmed. Thus, the Majority's ruling being to the contrary, I must dissent.

"CONCLUSIONS OF LAW

1. Liquidation by [appellants] has not in a period of almost four years succeeded in liquidating the bulk of partnership assets into cash.

2. The partnership debt is insignificant in relation to partnership assets.

3. If the Court ordered either an auction or the appointment of a receiver, the proceeds received in liquidation would suffer as a result.

4. By reason of their remaining in exclusive control of the partnership properties during the liquidation period requested by them; and, by reason of the death of Dr. Samuel Hankin [—one of the appellees]; [appellants] would have a clear and distinct advantage over [appellees] in any auction.

5. Equity and justice in this matter militate strongly in favor of a distribution of assets in kind."
(Lower Court Opinion at 7–8)