487 A.2d 1363

Max A. HANKIN and Janet Hankin

v.

Moe Henry HANKIN and Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Estate of Samuel Hankin and Harriet Hankin, Benjamin R. Shanken and Pauline Shanken and Pan American Associates.

Appeal of Harriet HANKIN and Estate of Samuel Hankin.

Max A. HANKIN and Janet Hankin

v.

Moe Henry HANKIN and Sabina Hankin, Gertrude Hankin, Perch P. Hankin, Samuel Hankin and Harriet Hankin, Benjamin R. Shanken and Pauline Shanken and Pan American Associates.

Appeal of Harriet HANKIN and Estate of Samuel Hankin.

Max A. HANKIN and Janet Hankin

v.

Moe Henry HANKIN, Sabina Hankin, Gertrude Hankin, Perch P. Hankin, Samuel Hankin, Harriet Hankin, Benjamin R. Shanken, Pauline Shanken and Pan American Associates.

Appeal of Moe Henry HANKIN, Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Benjamin R. Shanken and Pauline Shanken.

Max A. HANKIN and Janet Hankin

v.

Moe Henry HANKIN and Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Estate of Samuel Hankin and Harriet Hankin, Benjamin R. Shanken and Pauline Shanken.

Appeal of Moe Henry HANKIN, Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Benjamin R. Shanken and Pauline Shanken.

Max A. HANKIN and Janet Hankin, Appellants

v.

Moe Henry HANKIN and Sabina Hankin, Perch P. Hankin, Gertrude Hankin, Estate of Samuel Hankin and Harriet Hankin, Benjamin R. Shanken and Pauline Shanken.

Max A. HANKIN and Janet Hankin

v.

Moe Henry HANKIN and Sabina Hankin, Gertrude Hankin, Perch P. Hankin, Estate of Samuel Hankin and Harriet Hankin, Benjamin R. Shanken and Pauline Shanken and Pan American Associates.

Appeal of Harriet HANKIN and Estate of Samuel Hankin.

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed Jan. 30, 1985.

444

Theodore R. Mann, Philadelphia, for appellants (at 1304, 14 and 516) and appellees (at 154, 507 and 508).

Franklin Poul, Philadelphia, for appellants (at 508) and for appellees (at 1304, 14, 154, 507 and 516).

Philip D. Weiss, Norristown, for appellants (at 154 and 507) and for appellees (at 1304, 14, 508 and 516).

Before WICKERSHAM, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

This is the fifth in a series of appeals from orders of the Court of Common Pleas of Montgomery County pertaining to the contentious dissolution and winding up of a partnership business known as the Hankin Family Partnership. The principal characters of this saga, which dates back to 1977, are five brothers and sisters and their spouses, all of whom have joined one side or the other in the dispute. The more populous faction, the Majority Hankins, is comprised of Moe Henry Hankin, his wife Sabina Hankin, Perch P. Hankin, his wife Gertrude Hankin, and Pauline (Hankin) Shanken and her husband, Benjamin R. Shanken. The minority members are Max A. Hankin, his wife Janet Hankin, the Estate of Samuel Hankin, and his widow, Harriet Hankin.

In the matter now before the Court, six separate appeals from six different orders have been consolidated for argument. They can better be understood by at least a partial review of the litigation which has spanned a period of seven years and spawned four prior appeals. An action for dissolution and disposition of partnership assets was commenced by the minority on August 19, 1977. On April 2, 1979, the

Honorable Louis D. Stefan, chancellor, determined (1) that the partnership had been dissolved in 1977; (2) that three alternate requests for liquidation presented by the minority should be denied; and (3) that the majority should wind up the partnership by selling its assets. This determination was affirmed on appeal. *Hankin v. Hankin,* 279 Pa.Super. 179, 420 A.2d 1090 (1980) (*Hankin I*) (allocatur denied). However, on July 10, 1981, the chancellor set aside his prior order in response to a petition by the minority and ordered that an immediate distribution in kind take place among the holders of the five partnership interests. The chancellor stated:

> By reason of the various changes in circumstance ... since the date of the original Adjudication ... and [ ] considering that, in fact, majority Hankins have controlled the show since that date, with results that can be described only as disappointing[,] ... the Chancellor has concluded that distribution in kind [is justified].

A decree nisi was entered, therefore, which (1) scheduled a hearing for August 17, 1981 to determine the fair market value of the remaining partnership assets and, in contemplation of that hearing, authorized each side to employ, at partnership expense, an appraiser of partnership assets; (2) identified a procedure for effecting a distribution in kind; and (3) ordered that the status quo be maintained pending distribution. Exceptions were filed by the majority on July 17; but a Petition for Stay was denied by the chancellor on July 31. The exceptions were thereafter denied on August 12, and the hearing was rescheduled for August 24. On August 13, an appeal was filed. A renewed petition for a stay pending appeal was again denied by the chancellor. However, on August 19 Judge Watkins of the Superior Court granted a stay of all proceedings, including "the order pertaining to appraisals." In a 2–1 decision filed December 18, 1981 (Popovich, J., dissenting), the Superior Court reversed the chancellor. *Hankin v. Hankin,* 302 Pa.Super. 295, 448 A.2d 1049 (1981) (*Hankin II*) (allocatur denied May 3, 1982; reargument denied August 17, 1982).

The Court held that from the time of dissolution in 1977, "the majority partners, who are charged with the liquidation, have been hindered by the minority partners ... by litigation at every step of the way. Under all the circumstances," said the Court, "it does not appear that the liquidating partners have had a reasonable, unhindered time in which to accomplish an orderly liquidation of such vast holdings and they should be granted another year to accomplish same." *Id.*, 302 Pa.Superior Ct. at 300, 448 A.2d at 1051. The Court concluded:

> The order of the court below is reversed as to the selection process provided therein and the management and liquidation of the assets of the "Hankin Family Partnership" shall continue as provided in the Decree dated April 2, 1979 under the supervision of the court below for a period of one (1) year from the date of this opinion.

*Id.*, 302 Pa.Superior Ct. at 301, 448 A.2d at 1052.

Prior to the decision in *Hankin II*, a hearing before Judge Stefan had been held to determine, *inter alia*, whether the majority was required to pay out of partnership funds a bill for $66,143.14 submitted in September by Reaves Lukens, an appraiser hired by the minority to appraise the Hankin Family Partnership assets pursuant to the chancellor's order of July 10, 1981. Lukens testified that he had been retained by the minority on July 21, 1981 to do a complete appraisal and to be prepared to testify at a hearing to be held August 17. With the assistance of an order entered by the chancellor on July 28 directing the majority "to cooperate with Minority Hankins and the appraiser ... by providing them with immediate access to and copies of such data as they require to appraise the fair market value of those assets ... which [had] not yet been sold," the appraisal was in fact completed by August 17, 1981. After the Superior Court reversed the distribution in kind order and remanded (*Hankin II*), the minority renewed its request that the chancellor direct the partnership to pay the fee of the appraiser as provided in the July 10, 1981 decree nisi. The

chancellor, on November 29, 1982, issued a memorandum and order in which he concluded that the Superior Court's reversal of his decree nisi in *Hankin II* had "finally decided the issue ... concerning the appointment of appraisers; and thus, the issue of payment by the partnership for such appraisal work." "Accordingly," held the Court, "it would be beyond the power of this Court now to direct the partnership to make payment to Reaves C. Lukens Company, as requested." The minority has challenged this determination in an appeal by Harriet Hankin and the Estate of Samuel Hankin which has been docketed at 14 Philadelphia, 1983.[1]

Also raised as an issue at 14 Philadelphia, 1983 is the November 29, 1982 denial by the chancellor of a petition by the Estate of Samuel Hankin and Harriet Hankin for a partial distribution to permit payment of federal estate taxes and Pennsylvania inheritance taxes owed by the Estate of Samuel Hankin. Samuel Hankin, M.D., a former Hankin partner, had died on February 13, 1981, and in December, 1981 his estate had asked the court to order the partnership to pay estate and inheritance taxes totalling approximately $575,000. Neither his estate nor his beneficiaries were able to pay the tax, it was asserted, because almost all of the estate's assets consisted of unliquidated partnership holdings. Moreover, the petition averred, there was an agreement among the partners that expenses of this nature would be paid by the partnership. The chancellor denied the request, and we are asked to review and reverse that order in the present appeal.

1. A series of memoranda and orders was issued by Judge Stefan on November 29, 1982. All parties filed exceptions. By memorandum and order of January 31, 1983, the chancellor dismissed the exceptions. Appeals from the order dismissing exceptions are docketed at 508 Philadelphia, 1983 (Appeal of Max and Janet Hankin); 507 Philadelphia, 1983 (Appeal of Majority Hankins); and 516 Philadelphia, 1983 (Appeal of Harriet Hankin and the Estate of Samuel Hankin). All issues in these appeals are subjects of the appeals discussed in this opinion, and they will not be discussed separately. In dismissing the exceptions, the trial judge noted that all prior orders had been intended as final orders and that the dismissal of exceptions was only a formal exercise to insure finality.

In January, 1982, the minority petitioned the chancellor to enter an order directing reimbursement of Harriet Hankin and the Estate of Samuel Hankin for counsel fees in the amount of $500,000 which had allegedly been paid in furtherance of liquidation proceedings. By order of November 29, 1982, accompanied by memorandum, the chancellor denied such reimbursement. The minority appealed. That appeal is also docketed at 14 Philadelphia, 1983.

Following this Court's decision in *Hankin II*, the minority again requested the chancellor to order distribution in kind. This was based upon evidence arising after the appeal to the Superior Court "that Majority Hankins were not engaging in bona fide efforts to sell the partnership assets." On March 30, 1982, after hearing, the chancellor denied the minority's petition because "the chief intention of the Superior Court," as he interpreted the opinion, "was to continue with the liquidation by the majority, with court supervision, until at least December 18, 1982.[2] The minority appealed at 1304 Philadelphia, 1982.

Also docketed at 1304 Philadelphia, 1982 is an appeal by the minority from the chancellor's denial of a request for injunctive relief, filed in October, 1981, to enjoin the majority from continuing to employ children of the majority partners at $26,000 per year and from continuing to pay out of partnership funds legal fees to the law firm of Hankin, Hankin and Hankin.[3] The minority also sought an order directing the majority to reimburse the partnership for such payments or, in the alternative, to compel the payment of salaries to children of the minority who had been discharged at the time of dissolution. The chancellor denied

2. On February 26, 1982, the Superior Court affirmed per curiam an order entered by the chancellor and which had denied in 1979 a second minority petition for the appointment of a receiver. *Hankin v. Hankin*, 298 Pa.Super. 559, 442 A.2d 362 (1982) (*Hankin III*). This appeal has no relevancy to the issues in the present appeal.

3. Hankin, Hankin & Hankin is a law firm comprised of majority partners Moe Hankin, Perch Hankin and Lowen Hankin, son of Moe Hankin.

injunctive relief, and that order has also been made the subject of an appeal.

Finally, the majority has filed a cross-appeal, docketed at 154 Philadelphia, 1983, from a November 29, 1982 order of the chancellor in which the majority partners were directed to reimburse the partnership for counsel fees paid to two law firms, White and Williams and McTighe, Weiss & Stewart, since April 2, 1979. The required reimbursement totalled $136,944.52. This order also enjoined the majority from making any further payments of counsel fees out of partnership funds without prior approval by the court.

Three months after the last of these appeals, Judge Stefan rejected the majority's request for an extension of time within which to effect liquidation [4] and appointed a receiver to complete liquidation. He further ruled that "[a]n attempt to distribute in kind is now infeasible." Exceptions were denied on May 9 and yet another appeal was taken to the Superior Court. Argument on that appeal was expedited and on September 23, 1983, this Court reversed the chancellor's appointment of a receiver. *Hankin v. Hankin*, 319 Pa.Super. 147, 465 A.2d 1272 (1983) (*Hankin IV*). In an opinion by Judge Rowley, the Court noted that a receiver should be appointed only in an extreme case and under extraordinary circumstances. "In this case," held the Court, "there has been no finding of waste, dissipation of assets, fraud or mismanagement." The mere fact that the minority partners and the court believe that liquidation is taking too long was held to be insufficient reason to support appointment of a receiver. *Id.*, 319 Pa.Superior Ct. at 149, 465 A.2d at 1273. A petition for allocatur to the Supreme Court was granted on August 22, 1984; and that appeal is pending. *Hankin v. Hankin*, 22 E.D. Appeal Dkt. 1984. In the meantime, liquidation by the majority has continued under the supervision of the chancellor.

A court of equity has wide discretion in supervising the winding up of a dissolved partnership and is empowered

---

**4.** The extension granted by the Superior Court in *Hankin II* had expired on December 18, 1982.

to make such orders as it may determine necessary to serve the best interests of all parties. *Hankin I, supra* 279 Pa.Super. at 213, 420 A.2d at 1108. "Moreover, the court's supervisory power over the liquidation of a partnership necessarily includes the right to determine the sort of sale to be conducted." *Id.* The burden is on the appellants to prove that the chancellor has clearly abused his discretion. *Id.*, 279 Pa.Superior Ct. at 214, 420 A.2d at 1109. "[T]he chancellor's findings of fact will not be disturbed unless they are unsupported by adequate evidence." *Kazanjian v. New England Petroleum Corp.*, 332 Pa.Super. 1, 4, 480 A.2d 1153, 1155 (1984). See also: *Moore v. Mobil Oil Co.*, 331 Pa.Super. 241, 245 n. 1, 480 A.2d 1012, 1014 n. 1 (1984); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co.*, 327 Pa.Super. 99, 102, 475 A.2d 117, 118 (1984). On appeal, "our function is not to substitute our view for the chancellor's but, rather, to determine whether a judicial mind, on due consideration of the evidence as a whole, could reasonably have reached the conclusion of the chancellor." *Galford v. Burkhouse*, 330 Pa.Super. 21, 28, 478 A.2d 1328, 1332 (1984), quoting *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 282 Pa.Super. 526, 534, 423 A.2d 370, 374 (1980). On this basis we review the issues raised in the instant appeals.

## *1304 Philadelphia, 1982*

This appeal, as we have observed, challenges (1) the chancellor's denial of a second request for distribution in kind, and (2) the chancellor's refusal to enjoin the continued employment of children of the majority and the majority partners' law firm. We will affirm these orders.

 There is no question that the Superior Court in *Hankin II* expressly granted the majority an additional year in which to complete liquidation. The intervening evidence which the minority cites was not such that the chancellor can be said to have abused his discretion by following the mandate of the Superior Court. Indeed, it might well be argued that it would have been a clear abuse

of discretion if the chancellor had either ignored or attempted to overrule the Superior Court's order by directing distribution in kind prior to expiration of the extension ordered. Moreover and in any event, this issue is now moot. One year after the Superior Court's order, Judge Stefan did in fact grant relief in the form of the appointment of a receiver; and the Superior Court again reversed. See: *Hankin IV, supra.* Under these circumstances, it would be nonsensical to hold that the chancellor's order denying distribution in kind almost three years ago was an abuse of discretion and must now be reversed.

■ In denying injunctive relief the chancellor observed that a prior request for similar relief had been denied, and that this denial had been affirmed by the Superior Court in *Hankin I.* In an opinion by Judge (now President Judge) Spaeth, the Court had there said:

[T]he present record does not contain evidence of either a conflict of interest or waste sufficient for this court on appeal to order the [family] law firm disqualified. The law firm may now be performing some valuable services to the partnership by treating the routine legal matters generated by the liquidation and the normal partnership business.... Moreover, there is no convincing evidence that the law firm is at present acting other than in support of the liquidation ordered by the chancellor.

*Id.* 279 Pa.Super. at 217, 420 A.2d at 1110.

In response to a request by members of the minority that their children be reinstated as employees of the partnership, which request had been denied by the chancellor, the Court said:

It may well have been unfair to [the minority] and their children that the children were fired or forced out by [the majority] while [the majority's] children remained employed by the partnership. If [the minority's] children believe that they have any legal claim, for instance, for breach of contract, they may initiate an appropriate action. However, as an appellate court, this court will not order a [trial] court engaged in supervising the liqui-

dation of a partnership to require that certain employees be rehired and reimbursed at $26,000 a year.

*Id.*, 279 Pa.Superior Ct. at 218, 420 A.2d at 1111.

The instant petition for injunctive relief was nothing more than a renewal of the same request which had previously been denied. The chancellor found as a fact that "[a]ll that the Law Firm [Hankin, Hankin & Hankin] is doing really is the ministerial function, the paperwork and the like." (N.T. March 30, 1982, at p. 128). He held, therefore, that another law firm need not be substituted to perform such ministerial tasks. With respect to the majority's children, the chancellor held that *"on the record, as it now exists "* (N.T. March 30, 1982, at p. 135) (emphasis added), there is no justification for enjoining the majority partners from employing their own children in the partnership during liquidation.

■ It seems apparent, therefore, that the chancellor's order was supported not only by this Court's decision in *Hankin II* but also by independent findings with respect to succeeding events and circumstances. We perceive no abuse of discretion. It would be inappropriate for an appellate court to engage in piecemeal, second-guessing of ancillary orders of a court of equity engaged in supervising the liquidation of a partnership with respect to employment practices of the partnership during liquidation. If the personnel of the partnership are negligent in liquidating the assets of the partnership or exercise poor judgment or bad faith, compensation for any loss caused thereby can be accomplished in the chancellor's final order of distribution.

The orders appealed from at No. 1304 Philadelphia Term, 1982 are affirmed.

### 14 Philadelphia, 1983

This appeal by minority members Harriet Hankin and the estate of her late husband Samuel Hankin involves three issues:

(1) The denial of a request for an order directing the partnership to pay the appraiser retained by the minority;

(2) The denial of the minority's request for reimbursement of counsel fees expended by them; and

(3) A refusal to order the partnership to pay the state inheritance and the federal estate taxes owed by the Estate of Samuel Hankin, deceased.

▪▪▪ As a general rule, an appeal will lie only from a final order unless otherwise permitted by statute. *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977). A final order is one which ends the litigation or, alternatively, disposes of the entire case. *Pugar v. Greco,* 483 Pa. 68, 73, 394 A.2d 542, 544–545 (1978). An exception to the rule that appeals may be taken only from final orders has been recognized with respect to orders which are collateral to the main cause of action and involve rights too important to be denied review. *Praisner v. Stocker,* 313 Pa.Super. 332, 342–343, 459 A.2d 1255, 1260–1261 (1983). The requirements for appealability of collateral orders, as accepted by the courts of this Commonwealth, was first stated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Relying upon and following the Supreme Court decision, the Pennsylvania courts have held that an ancillary order is appealable if

(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Pugar v. Greco, supra* 483 Pa. at 73, 394 A.2d at 545. See also: *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975).

▪▪ When these requirements are applied to the orders from which this appeal was taken, it is readily apparent that the orders denying claims for an appraiser's fee and for counsel fees are not final. Although it is true that these orders are collateral to the main proceeding, it is equally

true that the questions presented thereby will be neither lost nor impaired if review is postponed until a final order of distribution has been entered. The parties to these proceedings have been prolific in generating collateral orders and then appealing to this Court for review of those orders. We decline to conduct a piecemeal review of the liquidation proceedings being supervised by an able trial judge. Questions pertaining to appraisers' fees and counsel fees can better be reviewed after final distribution has been ordered. Our quashing the appeal from these orders will allow the chancellor to reconsider these requests, if he deems it necessary, prior to entering a final decree distributing partnership assets. After a final order has been entered, all aspects of the distribution can be reviewed in one appeal.

The order denying a petition by the Estate of Samuel Hankin, deceased, for partial distribution to enable it to pay death taxes presents a different picture. It is based upon the alleged unavailability of other estate assets sufficient to pay taxes. This claim involves an alleged right which is not only important but which, if review is postponed until entry of a final decree, will be irreparably lost. Therefore, we will conduct a review of the order.

The chancellor rejected the petition for partial distribution because he found that there had been no agreement among the partners with respect to the use of partnership assets to pay taxes becoming due in the event of a partner's death and because the majority had committed no egregious conduct in its liquidation efforts. The petition, however, had not been premised only upon agreement. It was also contended that the Samuel Hankin Estate was unable to pay federal estate and state inheritance taxes because, except for an interest in the Hankin Family Partnership, the estate had inadequate assets. Because of the chancellor's ruling, the record does not permit a determination whether this averment is factually correct. Similarly, it cannot be ascertained from the record whether the liquidation of partnership assets has progressed sufficiently to permit a partial

distribution which would enable the Samuel Hankin Estate to pay these taxes. Finally, it is impossible to determine whether a partial distribution or advance can be made without prejudicing the rights of third persons or the rights of the remaining partners. Cf. *In re Estate of Mellon*, 455 Pa. 294, 314 A.2d 500 (1974).

We conclude that the absence of a buy-sell or comparable agreement to determine the rights of the partners upon the death of one of them is not controlling of the petition for partial distribution requested by the Estate of Samuel Hankin, deceased. To deny the petition for that reason alone, without further considering the averments of the petition, was an abuse of discretion. Furthermore, it was not a prerequisite to such relief that the majority be found guilty of misconduct or mismanagement during liquidation. Therefore, we will vacate the order denying the petition for partial distribution and remand for further proceedings consistent with the foregoing opinion.

Appeals from the orders denying immediate reimbursement for or payment of appraisal and counsel fees are quashed. The order denying the petition of the Estate of Samuel Hankin, deceased, for partial distribution is vacated, and said petition is remanded for further consideration consistent with the foregoing opinion.

### No. 154 Philadelphia, 1983

The majority's cross-appeal is from an order enjoining the payment of fees to the majority's counsel from partnership assets and directing the majority to reimburse the partnership for counsel fees previously paid by the partnership. We accept this appeal and review the court's order pursuant to Pa.R.A.P. 311(a)(4).

The general rule is that each party is responsible for his own counsel fees. *Estate of Wanamaker*, 314 Pa.Super. 177, 179, 460 A.2d 824, 825 (1983). Here, the chancellor appropriately observed that the majority, by using partnership assets to pay its counsel fees, had been

passing forty percent of those fees through to the minority. The fees, the chancellor found, had been incurred to further the interests of the majority, specifically in resistance of the various minority efforts to achieve what the minority deemed to be more efficient, effective and fair distribution of partnership assets. The chancellor concluded: "There is simply no basis for the assertion that the 40 percent minority interest must sit back and allow the majority to proceed carte blanche, with no contesting of their proposed actions, as the years roll by, and the horizon of dissolution fades ever deeper into the future. There are bona fide areas of dispute between majority and minority which the minority should have the right to litigate without being saddled with the entire cost of their own legal fees and 40 percent of the majority's legal fees." We agree. There was no abuse of discretion in the entry of an order directing the majority to pay its own counsel fees and enjoining the use of partnership assets for that purpose. Moreover, liability to pay counsel fees can better be determined at the time of final distribution.

The order which is the subject of appeal at No. 154 Philadelphia, 1983 is affirmed without prejudice to any future determination regarding liability for counsel fees.