**ESTATE OF David COOPER By and Through Denice COOPER, Administratrix of the Estate, Denice Cooper, individually, Denice Cooper, as legal guardian of the minor, David Cooper, Delmer Lee Cooper, and Margaret Cooper, Plaintiffs,**

v.

**Mark LEAMER, Harry Ersek, Ralph Fritz, Defendants.**

**Civ. A. No. 87–1560.**

United States District Court, M.D. Pennsylvania.

Feb. 10, 1989.

John Wendell Beavers, John Brendan Elbert, Philadelphia, Pa., for plaintiffs.

Robert G. Hanna, Jr., Philadelphia, Pa., and Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, Pa., for County of Bedford & Ralph Fritz.

David E. Lehman, Alan R. Boynton, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., for Mark Leamer, Harry Ersek & County of Huntingdon.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

Currently before the court in this civil rights action are the defendants' Fed.R.Civ. P. 56 summary judgment motions. Because they present many similar, if not identical issues, we shall discuss the motions jointly in this memorandum.

*Background*

This case arises from the November, 1986, shooting death of David Cooper, a twenty-three year old convicted felon and escapee from the Bedford County Jail. Armed with warrants for Cooper's arrest and suspecting that he might appear at his parents' remote mountain property in Huntingdon and Bedford Counties, the defen-

dants placed the property under surveillance. In light of Cooper's and his family's prior contacts with law enforcement officials, the defendants believed that Cooper could be armed and dangerous.[1]

On November 9, 1986, Huntingdon County Sheriff Leamer, Huntingdon County Deputy Sheriff Ersek, and Bedford County Deputy Sheriff Fritz were watching the Cooper property when David Cooper and his wife Denice approached in a car and stopped at a nearby shed. They spoke briefly, Denice Cooper drove away and David Cooper entered the building. The defendants attempted to follow him, but found the door to be locked from the inside. The two deputy sheriffs then positioned themselves on opposite sides of the shed, apparently to prevent Cooper's escape, and Sheriff Leamer went to call for assistance. Before Leamer returned, Cooper emerged from the shed. Fritz made his presence known, held up his badge and shouted, "Police, freeze." Cooper immediately fled from Fritz's sight and, as he rounded the corner of the shed, confronted Ersek who, with a single shotgun blast at a short range, fatally wounded him.

Questions exist whether Cooper was armed when he exited the shed. Fritz and Ersek testified at their depositions that he wielded a handgun and displayed it in a threatening manner. Fritz contends that Cooper emerged in a two-handed shooting position and Ersek maintains that Cooper turned toward him with the gun. A pathologist who conducted Cooper's autopsy testified at his deposition that he found a shoulder holster and eleven shells on Cooper's body. The plaintiffs allege that Cooper was unarmed at the time of his death and assert that the police "planted" a gun after the shooting. Denice Cooper testified that she witnessed the shooting and did not see a gun in the decedent's possession or near his body.[2]

Discussion

1. *Summary Judgment Standard*

The standard for evaluating a motion for summary judgment, set forth in Fed.R. Civ.P. 56, was explained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986):

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for the party. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...."

*Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. In answering that question, all facts and inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 232 (3d Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. Finally, "[a]lthough courts are to resolve any doubts as to the existence of genuine is-

---

**1.** David Cooper had been incarcerated in Bedford County for intimidating witnesses who were to testify against him in a criminal case arising out of his shooting at a vehicle. During the course of his escape, he assaulted at least one prison guard. Several of Cooper's brothers were in prison on charges of beating a Pennsylvania State Trooper. David Cooper had been involved in that assault and had been confined in a juvenile home from which he escaped. In September, 1986, the State Police raided the Cooper property and confiscated stolen goods and approximately thirty weapons, including a semi-automatic pistol. At that time Cooper's father was arrested when he reached for a shotgun. He subsequently pled guilty and was incarcerated.

**2.** Denice Cooper also alleges that she was kidnapped by defendants Leamer and Ersek on January 15, 1987, and held against her will for a period of approximately 17½ hours. The alleged kidnapping is not the subject of the defendants' motions and will not be discussed in this memorandum.

sues of fact against the parties moving for summary judgment, Rule 56(e) does not allow a party resisting the motion to rely merely on bare assertions, conclusory allegations or suspicions." *Fireman's Insurance Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982) (footnotes omitted).

### 2. Service of Process

■ Defendants Ersek and Leamer claim this action should be dismissed because the plaintiffs have not complied with the mandatory service of process provisions of Fed.R.Civ.P. 4(d). The plaintiffs delivered the complaint to the Huntingdon Police Department, but Ersek and Leamer are members of the Huntingdon County Sheriff's Department, a separate entity. The police department has no authority or duty to accept service for the sheriff's department.

While we find no error in the defendants' argument, we are persuaded that a more liberal construction of Fed.R.Civ.P. 4(d) is appropriate in this case. *Adams v. School Board of Wyoming Valley West School District,* 53 F.R.D. 267 (M.D.Pa.1971). Rule 4(d) is to be interpreted broadly where the defendants have actual notice of the suit. *See Nowell v. Nowell,* 384 F.2d 951 (5th Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968); *In Re Paolino,* 49 B.R. 834 (Bankr.E.D.Pa. 1985). Since we see no prejudice to the defendants, the plaintiffs' action will not be dismissed for failure to effect proper service.

### 3. Plaintiffs' State Wrongful Death/Survival Claims: Counts V and VI

Though the complaint primarily alleges civil rights violations, the plaintiffs have raised claims based on Pennsylvania's wrongful death and survival statutes, 42 Pa.C.S.A. §§ 8301 and 8302. The defendants first challenge the wrongful death

claims on the ground that the named plaintiffs lack standing to assert them and that only Cooper's administratrix may do so. The defendants are partly correct.

■ In an action brought to recover damages for wrongful death, we must distinguish between those persons entitled to maintain such an action and those entitled to recover. Upon proper proof, Cooper's wife, son and parents are entitled to recover damages for his alleged wrongful death. 42 Pa.C.S.A. § 8301(b). However, it does not follow that they all may assert claims in their own names. The determination of who may maintain the action is controlled by Pa.R.C.P. 2202, which provides as follows:[3]

(a) Except as otherwise provided in cause (b) of this rule, an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

(b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

(c) While an action is pending it shall operate as a bar against the bringing of any other action for such wrongful death.

Since this action was instituted more than six months after Cooper's death, the wrongful death claims may be maintained by Denice Cooper in her capacity as the decedent's administratrix, or by Denice, David, Delmer or Margaret Cooper as trustee ad litem on behalf of the others.

The plaintiffs have not complied with Rule 2202. We recognize, however, that their error is purely technical in nature. Accordingly, they will be afforded the op-

---

**3.** Though Rule 2202 is styled as a rule of procedure, it has the force and effect of law and is to be applied to wrongful death cases in the federal courts in Pennsylvania. *See e.g. Beascoechea v. Sverdrup & Parcel and Associates, Inc.,* 486 F.Supp. 169 (E.D.Pa.1980); *Jaffe v. Philadelphia & Western R. Co.,* 80 F.Supp. 416 (E.D.Pa.1948); *Suders v. Campbell,* 73 F.Supp. 112 (M.D.Pa. 1947).

portunity to amend Count V either to name Denice Cooper as plaintiff in her capacity as administratrix, or to name any one of the plaintiffs as trustee ad litem on behalf of all persons entitled to share in the damages.

■ The defendants next challenge the plaintiffs' right to recover punitive damages in a wrongful death action. Clearly, no such right exists. *Harvey v. Hassinger*, 315 Pa.Superior Ct. 97, 461 A.2d 814 (1983). Therefore judgment will be entered for the defendants on the punitive damages claim in Count V.

■ In Counts V and VI, the plaintiffs have requested attorney's fees under state and federal law. In Pennsylvania, the general rule is that each party is responsible for his own counsel fees. *Hankin v. Hankin*, 338 Pa.Superior Ct. 442, 487 A.2d 1363 (1985), *rev'd in part*, 507 Pa. 603, 493 A.2d 675 (1985); *Estate of Wanamaker*, 314 Pa. Superior Ct. 177, 460 A.2d 824 (1983). The Pennsylvania Supreme Court has written that " 'there can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same ...', *Smith v. Equitable Trust Co.*, 215 Pa. 413, 417, 64 A. 591, 592 (1906), or clear agreement by the parties, *Fidelity–Philadelphia Trust Company v. Philadelphia Transportation Company*, 404 Pa. 541, 548, 173 A.2d 109, 113 (1961), or some other established exception, *see Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1145 (1926)." *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 300–301, 344 A.2d 837, 842 (1975) (quoting *Corace v. Balint*, 418 Pa. 262, 271, 210 A.2d 882, 886–87 (1965); *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965)). Since the plaintiffs have directed the court to no statutory provision, agreement or exception to the general rule, judgment will be entered for the defendants on the request for attorney's fees claim under state law.

Judgment also will be awarded on the plaintiffs' claim for attorney's fees under 42 U.S.C. § 1988. Section 1988 is available only to prevailing parties in actions commenced under the civil rights laws. Since Counts V and VI are strictly pendent claims, there is no basis for attorney's fees under section 1988.

■ Finally, with respect to the state claims, the defendants claim they are entitled to judgments on the merits and, furthermore, are immune from suit under the Political Subdivisions Tort Claims Act, 42 Pa.C.S.A. § 8541 *et seq.*[4] In general, the Act provides that under principles of governmental and official immunity, political subdivisions and their employees are protected against civil damage actions, except in certain enumerated instances.[5] 42 Pa.C. S.A. §§ 8541, 8545 and 8546. In this case, none of the exceptions apply. However, in a case where an employee's conduct constitutes a crime, actual fraud, actual malice or willful misconduct, the immunity provisions of sections 8545 and 8546 likewise are not effective and the employee is not shielded from suit. Here, the plaintiffs contend that the defendants' conduct amounted to willful misconduct.

The record contains no evidence that Fritz's or Leamer's conduct constituted willful misconduct, and a reasonable jury could not return a verdict against them. Uncontradicted testimony shows that they did not improperly use physical force against the decedent and there is no evidence that they directed or conspired with

---

**4.** The provisions which are now found in sections 8541–8564 of the Judicial Code, 42 Pa.C.S. A. §§ 8541–8564, providing for governmental and official immunity, are commonly, but incorrectly, referred to as the Political Subdivision Tort Claims Act. Sections 8541–8564 constitute a substantial reenactment of the Political Subdivision Tort Claims Act, formerly 53 P.S. §§ 5311.101–5311.803, which was repealed by section 333 of the JARA Continuation Act of 1980, 42 P.S. § 20043. *Bentler v. Workmen's*

*Compensation Appeal Board*, —— Pa.Cmwlth. ——, 550 A.2d 854 (1988); *Morris v. Musser*, 84 Pa.Commonwealth Ct. 170, 478 A.2d 937 (1984).

**5.** The types of conduct which could be the basis for a negligence action recognizable under the act involve vehicle liability, care of personal or real property, trees, traffic controls, street lighting, utility services and facilities, sidewalks and animals. 42 Pa.C.S.A. § 8542.

anyone else to do so. There is no evidence that either Fritz or Leamer forced Cooper into the confrontation with Ersek, or that they intended that Cooper die at the hands of law enforcement officials. Fritz had ample opportunity to shoot Cooper, but did not. At the time of the shooting, he was on the opposite side of the shed and Leamer had already left the scene to get help. At most, a jury could find that Fritz and Leamer were negligent, in which case they would be protected by official immunity. Thus they are entitled to summary judgment on Counts V and VI, both on the merits and on the ground of official immunity.

At this point it is not clear whether Ersek is entitled to a judgment on Counts V and VI, either on the merits or because of immunity, and his motion will be denied. An issue of fact exists as to whether his killing of Cooper was willful, as indicated by his alleged statements immediately after the shooting.[6] There is also the question of whether Cooper was armed or whether Ersek reasonably believed him to be armed.

### 4. *Denice Cooper v. the Defendants: Counts I, II and III*

■ In the first three counts of the complaint, Denice Cooper, in her individual capacity, asserts civil rights claims against all three defendants. Far from a model of a well-drafted pleading, each of those counts appears to rest primarily upon alleged violations of David Cooper's constitutional rights. It is clear that one may not recover damages for the violation of another's civil rights. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Coon v. Ledbetter,* 780 F.2d 1158 (4th Cir. 1986); *O'Malley v. Brierley,* 477 F.2d 785 (3d Cir.1973). Therefore, with the exception of the kidnapping claims in Counts I and II, summary judgment will be entered for the defendants on Counts I, II and III. We note, however, that Denice Cooper, in

her capacity as administratrix of David Cooper's estate, has properly asserted claims for violations of his civil rights in Count IV. Thus the dismissal of Count III and portions of Counts I and II has no effect on this litigation.

### 5. *Loss of Companionship: Counts IV and VIII*

■ In Counts IV and VIII the plaintiffs, in their individual capacities, assert claims under 42 U.S.C. §§ 1983, 1985, and 1986. As noted above, they may raise claims only for violations of their own civil rights. Contrary to the defendants' assertions, the plaintiffs have done so in these counts. They do not seek to recover for the injuries suffered by the decedent. Rather, they seek to recover their personal losses of the fruits of the decedent's labor, as well as his companionship, comfort, society and guidance.[7]

The defendants have challenged the viability of the claims of Delmer and Margaret Cooper, the decedent's parents, who assert a claim based on their alleged constitutional right to the companionship, care, custody, and management of their child. The Supreme Court has not definitively decided whether such a right exists, and it is by no means uniformly established throughout the circuits. *Compare Valdivieso Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986) (stepfather had no constitutionally protected liberty interest in companionship of adult son) *with Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985) (mother had constitutionally protected interest in relationship with son, but only if deprivation was intentional) *and Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984) (father could recover under section 1983 for fatal shooting of adult son by police).

Several district courts in the Third Circuit have considered the question and have

---

**6.** Denice Cooper testified at her deposition that immediately following the shooting Ersek said, "He's down. We finally got him," and "He thought he could run this time and he was wrong."

**7.** We recognize, of course, that Denice Cooper, in her capacity as the administratrix of the decedent's estate, is asserting a claim for the alleged violations of the decedent's rights.

reached conflicting conclusions. The courts that have found no constitutional right to parenthood have done so in reliance upon the Third Circuit's two paragraph opinion in *Denman v. Wertz*, 372 F.2d 135 (3d Cir.1967). *See Gann v. Schramm*, 606 F.Supp. 1442 (D.Del.1985); *Anderson v. Erwin*, No. 76–2020 (E.D.Pa. December 20, 1976); *Strickland v. City of Easton*, No. 75–93 (E.D.Pa. October 27, 1976). *Denman* was an action for interference with a parent's right to access to his children and did not involve the death of a child. The plaintiff had taken his children from the custody of his wife in Ohio and attempted to transport them to Massachusetts. As the children were passing through Pennsylvania, they were apprehended by the police and were returned to their mother. The court of appeals affirmed the dismissal of the complaint on the ground that Denman failed to allege a deprivation of any federal right.

The cases in which the courts have followed *Denman* have involved the killing of adult or emancipated offspring, as in the present case. In a case concerning the death of a minor, one court distinguished *Denman* on the ground that a parent has a right to raise a minor child. *Jones v. McElroy*, 429 F.Supp. 848 (E.D.Pa.1977). More recently, in *Agresta v. Sambor*, 687 F.Supp. 162 (E.D.Pa.1988), the court discounted *Denman* and its progeny and allowed the parents of an adult, married son killed by the police to maintain a civil rights action. The court aptly noted that the above mentioned district court decisions preceded the Third Circuit's decision in *Estate of Bailey by Oare v. County of York*, 768 F.2d 503 (3d Cir.1985). The *Bailey* court recognized that a father had:

> a cognizable liberty interest in preserving the life and physical safety of his child from deprivations caused by state action, a right that logically extends from his recognized liberty interest in the custody of his children and the maintenance and integrity of the family, *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551

(1972); *Duchesne v. Sugarman*, 566 F.2d 817, 824–25 (2d Cir.1977). We follow the Seventh Circuit's decision in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), in holding based on these precedents that a parent whose child has died as a result of unlawful state action may maintain an action under § 1983 for the deprivation of liberty. *Id.* at 1242–45, 1251–53.

*Bailey* at 509 n. 7.

In light of *Bailey*, *Bell*, and not the prior district court decisions in this circuit, reflects the Third Circuit's view of parents' constitutional rights to the companionship of their children. *Agresta*. In *Bell*, the Seventh Circuit held that a father of an adult son could recover under section 1983 for the destruction of the parental relationship caused by his son's death. The court refused to place limitations on the parental relationship based on the child's age or lack of residential status with the father. Though relevant to the amount of damages, the child's age and residence "were not a bar to any recovery at all." *Bell*, 746 F.2d at 1245.

In the present case, we do not feel compelled to dismiss the plaintiffs' claims simply because the decedent was married, had a child of his own, and did not reside with his parents. We agree with the court in *Agresta*, that "[i]t would be contrary to a human experience to suggest that a parent's interest in the society and companionship of his child suddenly disappears when the child marries," and that "as with his age and residential status, a son's marriage does not extinguish his parents' right to recover for the complete elimination of their relationship with him." *Agresta*, 687 F.2d at 164. Likewise, decedent's status as a father does not affect his parents' constitutional right. *Id.* at 165.

From the record before the court, it does not appear that the decedent had a close relationship with his parents. However, we are not prepared to find as a matter of law that the relationship was so lacking as to preclude recovery by Delmer and Margaret Cooper. That matter remains for the jury.

6. *42 U.S.C. §§ 1985 and 1986: Count VIII*

█ In Count VIII, the plaintiffs set forth a civil rights conspiracy claim under 42 U.S.C. §§ 1985 and 1986. Section 1985 is aimed at preventing class-based or racial discrimination. The plaintiffs must allege and prove "some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirator's actions." *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). They have not done so. Their argument that a large family in a small town constitutes a class, against which can be directed an invidiously discriminatory animus, is frivolous. The defendants are entitled to summary judgment on the 1985 claim.

Without a section 1985 violation, the section 1986 claim must fail. "Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail." *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied sub nom., Mark Gardner Associates, Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Accordingly, summary judgment will be entered for the defendants on Count VIII.

7. *Merits of the Civil Rights Claims/Qualified Immunity: Count IV*

█ The defendants claim they are entitled to summary judgment on the plaintiffs' civil rights claims on the merits and because of qualified immunity. The record is barren of any evidence of improper conduct by Leamer or Fritz from which a reasonable jury could impose liability under the civil rights statutes. Furthermore, under the facts of this case, they are entitled to immunity from suit.

The Supreme Court set forth the standard for official immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Earlier cases established that immunity was available only to those officials whose conduct conformed to standards of objective and subjective reasonableness. Immunity was defeated if an official *"knew or reasonably should have known"* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury...." *Id.* at 815, 102 S.Ct. at 2736, 73 L.Ed.2d at 409 (brackets in original) (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, 224 (1975)). In *Harlow,* the Court recognized that the inclusion of a subjective element in the good faith defense often precluded resolving the immunity issue at the pleading or summary judgment stages of an action. To allow for pretrial adjudication of the question, the Court articulated an objective standard: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.

Most recently, the Third Circuit considered the qualified immunity issue in a case involving the use by prison guards of deadly force to prevent the escape of a prisoner. *Henry v. Perry,* 866 F.2d 657 (3d Cir.1989). The court noted that deadly force may be used if necessary to prevent escape and if, where feasible, some warning has been given. *See also Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

The question in determining the existence of qualified immunity is whether a reasonable person could have believed the defendant's action to be lawful in light of clearly established law and the information he possessed. *Anderson v. Creighton,* [483] U.S. [635], 107 S.Ct. 3034, 3040 [, 97 L.Ed.2d 523] (1987); *Clark v. Evans,* 840 F.2d 876, 881 (11th Cir.1988). In deciding the question, the objective facts control and mere allegations of malicious intent may not prevail over those facts. *Harlow v. Fitzgerald,*

457 U.S. [800,] 813, 817–818 [, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396] (1982). *Henry,* at 659. As discussed in part 3 of this memorandum, the objective facts in the record show that Fritz and Leamer acted reasonably under the circumstances. There is no evidence that they violated any of the decedent's or the plaintiffs' rights. They cannot be held accountable simply because of their presence on the Cooper property, or because of the plaintiffs' unsubstantiated allegations of malicious intent. They are entitled to summary judgment both on grounds of qualified immunity and on the merits of the plaintiffs' civil rights claims.

 Turning to the question of Ersek's liability under section 1983, we find that summary judgment is inappropriate for the same reasons that summary judgment was inappropriate on the plaintiffs' state law claims against him. Questions of fact must be resolved before a final decision on immunity and liability can be made.

Conclusion

In accordance with the foregoing discussion, we find that Leamer's and Fritz's motions for summary judgment should be granted. Ersek's motion, however, will be denied because of the existence of questions of fact concerning the events underlying the shooting of the decedent.

An appropriate order will issue.

ORDER AND JUDGMENT

AND NOW, this 10th day of February, 1989, upon consideration of the defendants' motions for summary judgment, it is ordered that:

1. Defendant Fritz's motion is granted and judgment is hereby entered for Fritz on all counts.

2. Defendant Leamer's motion is granted and judgment is hereby entered for Leamer on all claims in Count I, except Denice Cooper's kidnapping claim, and on all other counts.

3. Defendant Ersek's motion is granted in part and judgment is hereby entered for Ersek on all claims in Count II, except Denice Cooper's kidnapping claim,

and on the punitive damages and attorneys' fees claims in Count V, and on Count VIII.

4. Within ten (10) days, the plaintiffs shall amend Count V in accordance with the court's memorandum filed on this date.

5. This case will be placed on the April, 1989, trial list. Juries will be drawn in Court Room No. 1, ninth floor, Federal Building, Harrisburg, PA beginning at 9:30 a.m. on Monday, April 3, 1989. A pre-trial conference with counsel will be held on Thursday, March 30, 1989, in chambers, at 10:00 a.m.