Rafael Angel RYAN ROBLES, Plaintiff,

v.

Mercedes OTERO de RAMOS, et al., Defendants.

Civ. No. 86–1841 HL.

United States District Court, D. Puerto Rico.

Nov. 9, 1989.

Francisco M. Dolz Sánchez, E.L. Belén Trujillo, Old San Juan, P.R., for plaintiff.

John F. Nevares, Dept. of Justice, San Juan, P.R., Teresita Rivera Alonso, Juan Rafael González Muñoz, Fed. Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

The issue presented in this section 1983 claim is whether a penal guard could have reasonably believed it was lawful to shoot at an escapee from prison after the inmate tried to attack the guard with a spear, when the guard had attempted to physically prevent the escape, had ordered the prisoner to halt, and had fired a warning shot in the air prior to shooting at the escaping prisoner.

This action arose when plaintiff Rafael Angel Ryan Robles ("Ryan"), a convicted felon,[1] was shot and killed while attempting to escape from the Young Adults Institution ("Institution") in Miramar, Puerto Rico on December 5, 1985. The decedent's father sued Reynaldo Cordero Rivera, the prison guard who fatally shot his son, Mercedes Otero de Ramos, the Administrator of the Correctional Administration, Ramón

---

1. On November 27, 1985, Ryan pled guilty to the crime of theft, mayhem, lascivious and indecent acts, aggravated assault, and violation of the weapons law. He was to serve concurrently twelve years for theft, mayhem, eight years for lascivious acts, three years for aggravated assault, and six months for weapons violation. He was serving his sentence at the Young Adults Institution. *See* Exhibits A1–A5 attached to Defendants' Motion for Summary Judgment.

Avila Rodríguez and Luis Reyes Díaz, the Superintendents of the Institution; and Juan González Llanos, the person in charge of the Institution. Defendants move for summary judgment on the basis of qualified immunity.

## UNCONTESTED FACTS

The uncontested evidence[2] establishes that on December 5, 1985, custody officer Reynaldo Cordero Rivera ("Cordero") began his work shift at 4:00 A.M. at the watchtower of the Institution. At approximately 4:10 A.M., Cordero heard a noise and saw the fence which divides the penal population from the civilian population was shaking. Cordero then saw an inmate climbing over the fence using the stairs to the watchtower. Cordero tried to prevent the escape by grabbing the inmate but the inmate turned around and with one hand tried to stab Cordero's face or neck with a spear. Cordero retreated and immediately informed his superior officer of the escape through his radio. Cordero kept warning the inmate to halt and to get down from the fence. Nevertheless, the inmate continued to climb the fence. Cordero drew his revolver and fired a warning shot but to no avail, the inmate jumped from the fence to the sidewalk outside the prison fence and kept running. Cordero started shooting at the inmate in order to prevent his escape. He fired the remaining five bullets in the revolver. The inmate hid behind a commercial garbage container. Shortly thereafter, the inmate was captured behind the garbage container. The inmate was wounded and taken to obtain medical treatment. At the time, Cordero was not aware that he had hit the inmate. Cordero subse-

quently discovered that the escaping inmate was Rafael Angel Ryan Robles and that he had died later that morning.

## QUALIFIED IMMUNITY

### A. REYNALDO CORDERO RIVERA

As a general rule, "(g)overnment officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). The Court must examine the objective reasonableness of an official's conduct and determine whether the law was clearly established. *Id.* In other words, "State actors are entitled to qualified immunity from damages under Section 1983 if they have performed discretionary functions falling within the scope of their authority and have done so in an objectively reasonable manner, measured by the state of the law at the time the conduct occurred." *Brennan v. Hendrigan*, 888 F.2d 189 (1st Cir.1989); *Blackburn v. Snow*, 771 F.2d 556, 569 (1st Cir.1985).

Our purpose in the instant case is to determine the clarity of the law regarding the use of deadly force by a penal guard against a convicted escaping prisoner. It is clear that by 1985 the unjustified infliction of bodily harm upon a prisoner by a state official gives rise to Section 1983 liability. *See Unwin v. Robert Campbell*, 863 F.2d 124 (1st Cir.1988). "For an act to fall outside the scope of immunity, the unlawfulness must be apparent ... in the light of pre-existing law ... The contours of the

---

**2.** We find that the decedent's father has failed to meet his burden of demonstrating that there is a genuine issue as to any material fact pursuant to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a moving party supports its Motion for Summary Judgment with affidavits, depositions, and/or other similar materials negating the adversary's claim, Fed.R.Civ.P. 56(e) requires the nonmovant to go beyond the pleadings by producing "affidavits or depositions, answers to interrogatories, and admissions on file" that there is a genuine issue for trial. Since the decedent's father has simply

relied on the mere allegations asserted in the amended complaint, the decedent's father has therefore not controverted codefendant Cordero's affidavit and his deposition. Plaintiff merely relies on speculation and conjunctures, which are not enough to controvert the material allegations. "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns different versions of the truth which a fact-finder must resolve at an ensuing trial." *Mark v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Accordingly, we accept Cordero's undisputed factual version.

right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brennan v. Hendrigan,* 888 F.2d at 192 (1st Cir.1989). Officials are immune unless the law clearly proscribed the actions they took. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

The amended complaint alleges that the shooting violated Ryan's rights under the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution. Codefendant Cordero contends that he is entitled to qualified immunity because he was legally entitled to utilize deadly force against the escaping armed convict in this case in accordance with *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The plaintiff in *Whitley* had been shot in the leg by a prison guard during the quelling of a prison riot, without prior verbal warning. The Supreme Court held that the infliction of pain in the course of a prison security measure is not an Eighth Amendment violation unless the pain inflicted was unnecessary and wanton. The Court reasoned that prison officials should be accorded deference when they are reacting to a prison disturbance and attempting to bring about order. *Id.* at 320–22, 106 S.Ct. at 1085.

On the other hand, Ryan's father relies on *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), as establishing the law on the use of deadly force. In that case, the Supreme Court held that the use of deadly force against an unarmed nonthreatening fleeing suspect was unreasonable seizure in violation of the Fourth Amendment.

■ There are two main sources of constitutional protection against the deliberate use of physically abusive force by government officials—"the Fourth Amendment's prohibition against unreasonable seizures of the person or, the Eighth Amendment's ban on cruel and unusual punishment." *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). It is clear that the Fourth Amendment rather than the Eighth Amendment applies to claims of physical abusive government conduct against *free* citizens.[3] However, it is not clear the scope of the Fourth Amendment protection after conviction. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (the Fourth Amendment prohibition against unreasonable searches is inapplicable to an inmate's prison cell). Nevertheless, "after conviction, the Eighth Amendment serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified." *Id.* 104 S.Ct. at 1871, n. 10. We, therefore, apply the Eighth Amendment standard in the present case because at the time that the deadly force was used, Ryan was a convicted person.[4]

The Eighth Amendment proscribes "cruel and unusual punishment." This prohibi-

---

**3.** In *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 the Supreme Court decided the Fourth Amendment's "objective reasonableness" standard rather than substantive due process standard applies to claims of excessive force by law enforcement officers when making an arrest, investigatory stop, or other seizure of *free* citizens.

**4.** Even if the Fourth Amendment applied to convicted persons, we would still find that codefendant Cordero is entitled to summary judgment. We would specifically hold that Cordero's conduct was objectively reasonable under the circumstances pursuant to *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Garner,* the Supreme Court found that the use of deadly force by an unarmed suspected fleeing felon who posed no threat to the officer or others was unreasonable search and seizure in violation of the Fourth Amend-

ment. The Court held the use of deadly force is unreasonable if used for the sole purpose of preventing a felon's escape. If, however, "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious physical harm, deadly force may be used if necessary to prevent escape and if, where feasible, some warning has been given." *Id.* at 11–12, 105 S.Ct. at 1701. Here, a reasonable jury could only conclude that Cordero acted reasonably in his decision to fire his revolver at Ryan after he had tried to physically prevent the escape, given verbal warnings and fired a warning shot. *See also Ford v. Childers,* 855 F.2d 1271 (7th Cir.1988) (It was reasonable for a police officer to use deadly force on a dangerous fleeing felon who was armed with a deadly weapon and was likely to pose a danger of serious harm, after two warnings were given).

tion was designed to protect those convicted of crimes. *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). "After incarceration, only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* at 670, 97 S.Ct. at 1412 (*quoting Estelle v. Gamble,* 429 U.S. 97, 101, 97 S.Ct. 285, 289, 50 L.Ed.2d 251 (1976)). *See also Smith v. Thomas,* 475 F.Supp. 1135, 1139 (E.D.Ark.1979) (the use of force does not necessarily amount to brutality).

Whether the particular force used rises to unnecessary and wanton infliction of pain, the Court may consider four factors explained by Judge Friendly in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied, sub nom, Employee–Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* *See also Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085; *Graham,* 109 S.Ct. at 1872–73 n. 11.

The Supreme Court adopted the last factor in the *Johnson v. Glick* test for the prison disturbance situation. *Unwin,* 863 F.2d at 129. In *Whitley,* a convicted prisoner brought a section 1983 claim alleging that prison officials had violated his Eighth Amendment rights by shooting him in the knee during a prison disturbance. In deciding whether the measure taken inflicted unnecessary and wanton pain, the Supreme Court stated that query "*ultimately turns on 'whether force was applied in a good*

faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm'." *Id.,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (*quoting Glick,* 481 F.2d at 1033.) The Court reasoned that prison officials "should be accorded wide-ranging deference ... (in efforts made) to preserve internal order and discipline and to maintain institutional security." *Id.* 475 U.S. at 321, 106 S.Ct. at 1085. However, the court is not prevented from reviewing actions taken in bad faith. We also note that prison officials cannot be judged by hindsight, especially when split second decisions have to be made. *See Graham,* 109 S.Ct. at 1872 ("the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"); *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (neither judge nor jury should substitute their judgment for that of officials who have made a considered choice).

The question presented in this case is whether the deadly force used by Cordero was applied in a good faith effort to prevent the prisoner's escape or maliciously and sadistically for the very purpose of causing harm. *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085. *See also Henry v. Perry,* 866 F.2d 657 (3rd Cir.1989) (no Eighth Amendment violation when police used force to apprehend a convicted escapee). Under the facts before us, and the information that Cordero knew at the moment of the shooting,[5] we find that Cordero's conduct cannot be said to be unnecessary and wanton infliction of pain to constitute an Eighth Amendment violation. Ryan was attempting to escape from prison. Cordero saw Ryan climbing the fence separating the prison institution from the public street. Cordero attempted to physically prevent Ryan's escape by grabbing his person but Ryan tried to attack him

---

5. At the time of the escape, Cordero did not recognize Ryan because he could not see his face. Prior to the incident, Cordero knew of Ryan through other guards as being a dangerous person. Plaintiff's Exhibit 1, Cordero's dep-

osition at 9–10. *Ford,* 855 F.2d at 1275 (officer's liability is determined by the information he possessed at the very moment he fired the fatal shot).

with a spear.[6] When this measure failed, Cordero called his superior on his radio for assistance. Cordero verbally warned Ryan to desist. Nevertheless, Ryan continued to climb the fence. Then, Cordero fired a warning shot. Ryan continued to disregard all the warnings. After Ryan had jumped down to the street outside the institution, and started to run, Cordero fired his revolver. Even though Cordero fired five bullets he was not aware that Ryan had been wounded. Under these specific circumstances, it was objectively reasonable for Cordero to believe his actions were lawful. *See, e.g., Whitley,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251; *Henry,* 866 F.2d 657; *United States v. Smith,* 840 F.2d 886 (11th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988). *See also Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1. Moreover, plaintiffs have failed to produce any evidence of willful or malicious misconduct. *Estate of Cooper v. Leamer,* 705 F.Supp. 1081, 1085 (N.D.Pa.1989).

The present case resembles *Clark v. Evans,* 840 F.2d 876 (11th Cir.1988), and *Henry v. Perry,* 866 F.2d 657 (3rd Cir.1989). In *Clark,* an unarmed inmate who was sentenced to life in prison was shot and killed while attempting to escape from the state prison. At the time of the incident, the penal institution was subject to a consent decree which dealt with the condition of the prison such as use of force, security, and training of officers. Under the decree, an officer may use deadly force at an escaping inmate if the escape was in progress and cannot be reasonably prevented in a less violent manner. The Court reasoned under this clearly established standard and the information available to the reasonable officer, a reasonable officer would have believed it was lawful to shoot. The guard knew of the inmate's previous escape attempt and about a prior assault on a penal guard. The guard saw the escape and saw both the inmate and guards warning him to stop. The guard then fired two warning shots before firing the fatal shot.

In *Henry,* officers had fired five or six shots at their prisoner who was attempting to escape. The prisoner was injured by one of the shots but was able to complete his escape. He was subsequently recaptured. The Third Circuit reversed the district court's denial of defendants' motion for summary judgment. In examining the testimony at plaintiff's criminal trial for escape and several affidavits, the Court determined that it was undisputed that the prisoner did receive a verbal warning before the custody fired his weapon. The Court therefore concluded that the force applied was made in good faith effort to prevent the escape.

Similarly, we must find that codefendant Cordero applied deadly force in a good faith effort to prevent Ryan's escape. Cordero took various measures before resorting to the use of deadly force. He gave both repeated verbal warnings and a warning shot. Since some warning was given, the use of deadly force was needed in order to prevent the escape of a desperate convict armed with a spear who was likely to pose a serious threat to the community. *See Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1. A penal guard has a duty to prevent escapes. *Colorado v. Hutchinson,* 9 F.2d 275 (8th Cir.1925).

> Escape is prohibited not only because the state wants its prisoners to remain confined until their sentence expire or their paroles are granted, but also because a determined escapee may kidnap a hostage, kill a guard, steal an automobile or rob a store to facilitate his escape.

*United States v. Nix,* 501 F.2d 516 (7th Cir.1974).

Furthermore, the issue of whether an officer must use disabling force before using deadly force need not be addressed because at the time of the incident, there was no statute or case law expressly re-

---

**6.** Even accepting the allegation that Ryan was unarmed, Cordero had ordered him to stop and a warning shot had been fired before Cordero resorted to shooting his revolver at Ryan. It would be reasonable to believe that an escaping convict was likely to pose a threat to the public, especially an inmate who succeeded in preventing the prison guard from grabbing him by using a spear while climbing the fence.

quiring a law enforcement officer to use disabling force before shooting to kill. *See Clark*, 840 F.2d at 882. Since no distinction has been made between disabling force and deadly force in cases where deadly force has been employed against a fleeing felon, it cannot be said, without more, that a custodial officer must use disabling force before utilizing deadly force against an escaping convict. *Id. See Garner*, 471 U.S. at 8–12, 105 S.Ct. at 1700–01. Each case must be considered in light of its particular factual circumstances. Cordero could not have been put on notice that he had to first shoot to maim. Therefore, Cordero could not be subject to civil liability for shooting to kill when the law had not clearly established a standard of disabling force. In any event, we hold that Cordero's action was not unreasonable under this set of facts. Accordingly, we find that on this record codefendant Cordero is entitled to qualified immunity and entry of summary judgment in his favor.

### B. MERCEDES OTERO de RAMOS, LUIS REYES DIAZ, RAMON AVILA RODRIGUEZ AND JUAN GONZALEZ LLANOS

Under Section 1983, "(a) supervisor 'may be found liable only on the basis of her own acts or omissions'." (citation omitted.) *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989). The theory of *respondeat superior* is not available to impose liability upon supervisors under civil rights. A plaintiff must demonstrate that the supervisors' conduct or inaction constitute reckless or callous indifference to constitutional rights. *Id.* Mere negligence or a failure to act is not enough to state a Section 1983 action. *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985), *cert. denied, sub nom, Town of Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

The amended complaint alleges that codefendants Mercedes Otero de Ramos ("Otero"), Luis Reyes Díaz ("Reyes"), Ramón Avila Rodríguez and Juan González Llanos were grossly negligent and deliberately indifferent in the recruitment[7] of Cordero and in his training and supervision regarding the lawful use of a revolver. It is further alleged that defendants' failure in enforcing Puerto Rico law on the use of deadly force created an atmosphere of lawlessness at the penal institution.[8]

These claims against Cordero's superiors are conclusory.[9] There are no specific factual allegations that defendants improperly supervised and trained Cordero, which would amount to gross negligence. Plaintiff also fails to allege facts demonstrating a policy or pattern lawlessness which would show that defendants acquiesced in violent police behavior in contravention of federal law.

Moreover, the Opposition to the Motion for Summary Judgment does not provide any additional facts or evidence to show that Cordero's training by all the defendants in the use of firearms was inadequate or that such improper training was the cause of Ryan's fatal injuries. For instance, in *Voutour v. Vitale*, 761 F.2d 812 (1st Cir.1985), the First Circuit found that there existed a genuine issue of fact as to whether the alleged lack of proper police training was the proximate cause of the officer's alleged use of excessive force. Police officer Vitale never attended police training in direct violation of a Massachusetts statute requiring that all law enforce-

---

**7.** The amended complaint fails to set forth specific allegations regarding improper recruitment of Cordero by defendants. In addition, codefendants Otero and Reyes cannot be found liable because neither defendant was directly involved in the recruitment of Cordero.

**8.** The Court also dismisses plaintiff's causes of action for First Amendment violation and Ryan's constitutional right to parenthood as to be frivolous. We further dismiss plaintiff's conspiracy claim because he has failed to plead the elements of 42 U.S.C. section 1985 violation. *See Quiñones v. Szorc*, 771 F.2d 289 (7th Cir. 1985); *Munson v. Friske*, 754 F.2d 683 (7th Cir. 1985).

**9.** To state civil rights violation, the complaint must allege minimal facts, not subjective characterizations. *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).

ment officers attend police training school and satisfactorily approve the course. Vitale also never had any weapons training. In addition, an expert testified that on the job training was wholly inadequate. In contrast, in the present case, Cordero attended the Puerto Rico Police Academy which he satisfactorily completed. He also received informal job training prior to assuming his shift. Cordero had received firearm training at the Administration of Corrections, in the U.S. Army, and the National Guard. *See* Cordero's affidavit. Claiming that there was a policy or practice of using unjustified deadly force, the decedent's father points to one or two incidents where a custodial officer used deadly force on an escaping convict at the Institution. However, few incidents of individual misconduct by a law enforcement official will not be enough to support the inference that the supervisor failed to adequately train, supervise, or discipline its officers. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820–824, 105 S.Ct. 2427, 2434–36, 85 L.Ed.2d 791 (1985). Thus, plaintiff has not shown any evidence of a pattern or policy existed in the use of deadly force by custody officers which resulted in the deprivation of constitutional rights.[10]

In addition, Otero had never received a complaint regarding Cordero's performance of his duties from Cordero's supervisors. Hence, no inference can be made that Otero failed to discipline Cordero. In fact, Cordero's record included certificates of merits and a commendation letter by the former Corrections Administrator congratulating Cordero on his efforts in an inmate stoppage at the Institution. *See, e.g., Voutour*, 761 F.2d 812 (the superiors were aware of three distinct incidents regarding the unjustified use of revolvers by a particular officer). The present case is unlike the *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir.1989), where the supervisors were found liable under Section

1983 because they were aware of numerous civilian complaints against their subordinate police officer. The First Circuit determined that this inaction amounted to reckless or callous indifference to the rights of the citizens of Puerto Rico.

In summary, we find that codefendant Cordero is entitled to summary judgment. He exercised reasonable force in a good faith effort to prevent Ryan's escape. Deadly force was not applied in a malicious or sadistic intent to cause harm. We further find that the remaining defendants cannot be held liable because their actions were neither grossly negligent or deliberately indifferent.

WHEREFORE, the motion for summary judgment filed by defendants is hereby GRANTED. Because plaintiff's complaint seeks only money damages, qualified immunity is an absolute defense to the action. Accordingly, judgment shall be entered dismissing the complaint. No costs.

IT IS SO ORDERED.

---

**10.** In codefendant Cordero's deposition, he states that after the shooting incident, he had learned that there had been previously a fatally shooting of an inmate by a custody officer. Plaintiff's Exhibit 1, Cordero's deposition at 19–21. Cordero also stated that there may have been some other incidents before he had arrived at the Institution. Nevertheless, a few incidents of misconduct are not enough to create a policy or pattern of unlawful conduct. *See, e.g., Clark*, 840 F.2d at 885 (four cases of disregarding committal orders in four years would be insufficient to put Commission of Department of Corrections on notice).